**STEELWORKERS COOPERATIVE LOCAL LODGE 1849 OF the INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIPBUILDERS, BLACKSMITHS, FORGERS & HELPERS, AFL–CIO, Plaintiffs,**

v.

**TUBULAR PRODUCTS DIVISION (MILWAUKEE PLANT) OF the BABCOCK & WILCOX COMPANY, Defendant.**

Civ. A. No. 76–C–481.

United States District Court,
E. D. Wisconsin.

Oct. 18, 1978.

 

Robert E. Gratz, Milwaukee, Wis., for plaintiffs.

James F. Honzik, Milwaukee, Wis., for defendant.

REYNOLDS, Chief Judge.

This case arises out of a dispute between plaintiff Steelworkers Cooperative Local Lodge 1849 ("the Union") and the defendant Tubular Products Division of the Babcock & Wilcox Company ("the Company"), concerning the proper job evaluation and wage rate for the position of draw bench operator. On January 17, 1974, a grievance was filed seeking a re-evaluation upwards for the position of draw bench operator. On April 29, 1976, an arbitrator issued an award granting a pay increase of $.18 per hour, effective on the date of the award. Thereafter on May 14, 1976, the Company issued a new job rating for the position of draw bench operator which, as a result of the Company's re-evaluation of the experience factor, decreased the wage rate to its prior level. The Union commenced this action in July of 1976 for declaratory and injunctive relief. It seeks declaratory relief to the effect that the wage increase in the arbitrator's award should have been retroactive to the date of filing of the original grievance, and injunctive relief requiring the Company to restore the experience factor as it existed prior to May 17, 1976. The matter is now before the Court on cross motions for summary judgment. For the reasons hereafter stated, the Company's motion will be granted in part and denied in part, and the Union's motion will be granted in part and denied in part.

At all times pertinent to this dispute, the Union and the Company were parties to a collective bargaining agreement, Article X of which, entitled "Grievance Procedure and Arbitration," provides for a five-step grievance procedure culminating in binding arbitration. Pursuant to Article X, a grievance is first presented to the department foreman, then to the department superintendent, then to the Union Grievance Committee with the Company at a monthly meeting, then to the staff man of the Union along with the Bargaining Committee and the Company, and then:

"(a) * * *.

"Step 5. A grievance involving the meaning and application of the Agree-

ment not satisfactorily settled in Step 4 may be referred to a Board of Arbitration * * *.

"(b) The Board of Arbitration shall have no power to add to, subtract from, change or modify the provisions of the Agreement. * * * "

Article IX, section 2(b) of the collective bargaining agreement provides that the Manual on Wage Systems is a part of the Agreement, and section 4 of the job evaluation procedure, as it appears in the Manual on Wage Systems, provides in part:

"4. NEW JOBS AND CHANGES.

"Rates on newly created positions or rates changed due to mechanical or other improvements shall be determined by the evaluation committee subject to approval by management and subject to grievance by the Union within thirty (30) days after the establishment of such rates. Any change in such rate resulting from grievance procedure shall be made retroactive except where a rate has been reduced."

Pursuant to the Manual on Wage Systems, job evaluations are made on the basis of eleven factors, with each factor rated in degrees for which point values have been fixed. The point total for any job determines its labor grade, which in turn dictates the wage rate that is appropriate for that job. The factors involved in any evaluation are as follows: education, experience, initiative and ingenuity, physical demand, mental or visual demand, responsibility for equipment or process, responsibility for material or product, responsibility for safety of others, responsibility for work of others, working conditions and unavoidable hazards.

In December 1973, as a result of the elimination of two types of positions and the rearrangement of responsibilities in the department in which the draw bench operators work, the Company re-evaluated the position of draw bench operator in accordance with the job evaluation procedure and upgraded it by 38 points. The Union thereafter on January 17, 1974, filed its grievance requesting:

"Due to the recent order by Gen. Foreman R. Pond that the Draw Bench operators must now order original tooling as well as back up tooling we request a re-evaluation upwards in our rate be made to reflect the added duties and responsibilities."

The grievance proceeded to arbitration, at which stage the parties agreed that seven of the eleven job evaluation factors had been properly evaluated by the Company and the Union requested a re-evaluation by the arbitrator of the factors of experience, physical demand, working conditions, and hazards. The arbitrator's award, issued on April 29, 1976, provided:

"The draw bench operator was properly evaluated with respect to the factors of hazards, working conditions, and experience and, to that extent, the grievance is denied. With respect to the factor of physical demand, however, the draw bench operation has been improperly evaluated; as to that factor the proper rating must be at the 4th degree rather than the 3rd degree. Accordingly, an additional 10 points on that factor must be added to the job classification for the draw bench operator raising it to a total of 297 points and a job grade of 4B with all the rights and benefits concomitant to that job grade. This award, however, shall be operative only as of today's date and shall not be applied retroactively."

The Union subsequently requested the Company to ignore that portion of the arbitrator's award which provided for non-retroactive application of the award, which request was denied, and on May 14, 1976, the manager of industrial relations for the Company wrote to the Union to inform it that, since the arbitration hearing, "the Company has been reviewing the Draw-bench Operator's Job Description and Job Rating Sheet. In light of the arbitrator's review of the case, our review of the Job Description and Rating Sheet and the Company's right to change an evaluation of a job when warranted," the rating of two factors had been changed:

"A. The factor Physical Demand has, in line with the arbitration award,

been changed to Degree 4—40 points.

"B. The Experience factor has been changed from 1½ years and 63 points to 10 months and 50 points."

The letter further provided:

"* * * The net result of these changes is a point total for the Drawbench Operator of 284—Labor Grade 5A. This is the same Labor Grade, although 3 points less than the Drawbench Operator Rating effective December 17, 1973.

"In keeping with the arbitration award, I have submitted an authorization to the Payroll Department to pay each Drawbench Operator a lump sum payment of 18¢ per hour for all hours worked in the Drawbench Operator classification from 7:00 A.M. Thursday, April 29, 1976 through 6:59 A.M., Monday, May 17, 1976."

On July 8, 1976, the Union commenced this action.

The Union claims, first, that the arbitrator's failure to make the wage increase provided for in the award retroactive to the date of filing of the grievance was a violation of Section 4 of the job evaluation procedure as set forth in the Manual on Wage Systems and incorporated into the collective bargaining agreement. Second, it claims that the Company's re-evaluation of the position of draw bench operator subsequent to issuance of the arbitrator's award was in violation of that award. The Company contends that the arbitrator had full authority to decide the terms of payment of the wage increase, and that the Company itself has a continuing right to re-evaluate a job at any time.

With respect to the issue of the Company's re-evaluation, the Union has stated in its brief at page 8: "The parties agreed that either the Company or the Union could challenge a job evaluation even where there was no change in the job description or working conditions." However, the Union also claims that if the Company can re-evaluate a position even after the job evaluation of that position has been the subject of binding arbitration, then the provisions of Article X of the collective bargaining agreement would be rendered a nullity. It contends that the Company should not be permitted to circumvent an arbitrator's award by repetitive submission to arbitration of the same grievance.

■ The Court finds, however, that the grievance which was submitted to arbitration and was the subject of the arbitrator's award of April 29, 1976, did not foreclose the Company from making a subsequent re-evaluation downward of any but the one factor which the arbitrator found to have been improperly evaluated by the Company. The Union defined its request in the first instance as being one for "a re-evaluation upwards." Thus the issue before the arbitrator was not whether all eleven of the job evaluation factors had been properly evaluated, but rather whether the four factors which were in dispute should be evaluated upward. While it is arguable that an arbitrator may go beyond the scope of the initial grievance in making his award, it does not appear that he did so in this instance despite the somewhat broad language in the award itself, wherein it is stated that "the draw bench operator was *properly evaluated* with respect to the factors of hazards, working conditions, and experience . . ." (Court's emphasis) Reading the arbitrator's award together with his decision, and particularly his discussion of the experience factor at pages 8 to 9 of his decision, convinces this court that he was not presented with and did not decide the issue of possible downgrading of the job evaluation factors. In fact, had the arbitrator taken it upon himself to expand the scope of the grievance and to order that a particular factor be down-graded in face of the Union's request for an upgrade, it is probable that the Union would have been the first to complain that the arbitrator was exceeding the scope of his authority pursuant to the terms of the collective bargaining agreement.

■ With respect to the issue of the retroactivity of the wage increase, so long as the arbitrator's award can in some rational manner be derived from the language

of the collective bargaining agreement, the award must be upheld by the court. *Amoco Oil Company v. Oil, Chemical and Atomic Workers, International Union, Local 7–1, Inc.*, 548 F.2d 1288, 1294 (7th Cir. 1977), cert. denied 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 389 (1977). The Company argues that because Section 4 of the job evaluation procedure as set forth in the Manual on Wage Systems provides for retroactivity of an increase in wage rate only where "such rate result[s] from grievance procedure," a wage rate resulting from arbitration need not be made retroactive. It contends that Article X of the collective bargaining agreement, entitled "Grievance Procedure and Arbitration," provides for two separate procedures, i. e., (1) grievance, and (2) arbitration, and that the retroactivity provided for in the Manual on Wage Systems applies only if a matter is settled in the course of the former type of proceeding.

■ The position is absurd. A reading of Article X makes it plain that the grievance procedure and arbitration are part of a single cumulative process, the fifth and last step of which is binding arbitration. That being the case, the Manual on Wage Systems applies to the grievance involved in this action, and the award of back pay arising out of the grievance and arbitration procedure must be made retroactive to the date of filing of the grievance.

■ While the arbitrator purported to exercise his discretion in making the award of back pay prospective only, he did not have the Manual on Wage Systems before him during the arbitration proceeding. An arbitrator's authority is limited by the provisions of the collective bargaining agreement, and "his award is legitimate only so long as it draws its essence from the collective bargaining agreement." *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). See also *Amoco Oil Company*, supra. In this case, once the arbitrator decided the matter of the proper job evaluation of the draw bench operator procedure, the consequence of retroactivity of the wage increase flowed automatically from that decision.

For the foregoing reasons,

IT IS ORDERED that the motion of the plaintiff Steelworkers Cooperative Local Lodge 1849 for summary judgment is granted insofar as it seeks modification of the arbitrator's award of April 29, 1976, (Part A of plaintiff's demand for judgment, set forth in the complaint), and is denied insofar as it seeks injunctive relief and restoration of the experience factor as it existed prior to May 17, 1976. (Part B of the plaintiff's demand for judgment, set forth in the complaint)

IT IS FURTHER ORDERED that the motion of the defendant Tubular Products Division for summary judgment is granted with respect to Part B of plaintiff's demand for judgment as set forth in the complaint, and is denied with respect to Part A of plaintiff's demand for judgment as set forth in its complaint.

IT IS FURTHER ORDERED that the arbitrator's award issued April 29, 1976, "In the Matter of Arbitration Between: TUBULAR PRODUCTS DIVISION MILWAUKEE PLANT OF THE BABCOCK & WILCOX COMPANY, AND STEELWORKERS COOPERATIVE LOCAL LODGE 1849," FMCS 75–K–17978, Gr. No. 10–4, is modified to provide that the increased rating of the draw bench operator position is given retroactive effect to January 17, 1974.

IT IS FURTHER ORDERED that the requests of both parties for attorneys' fees are denied.